IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

Case No.: _____

GS HOLISTIC, LLC,

                Plaintiff,

v.                                                      DEMAND FOR JURY TRIAL

CLOUD 69 CONVENIENCE
STORE INC. d/b/a CLOUD 69
CONVENIENCE STORE, HI-FI NEWS
& GROCERY INC d/b/a PREMIUM
CIGAR & SMOKE SHOP, and
GURDIP SINGH JOSAN,

                Defendant.

_____/

## **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

The Plaintiff, GS HOLISTIC, LLC (hereinafter referred to as "GS"), by and through its undersigned counsel, hereby files this, its Complaint against the Defendant, CLOUD 69 CONVENIENCE STORE INC. d/b/a CLOUD 69 CONVENIENCE STORE, HI-FI NEWS & GROCERY INC. d/b/a PREMIUM CIGAR & SMOKE SHOP, GURDIP SINGH JOSAN ("Defendants"), and alleges, as follows:

## **Jurisdictional Allegations**

1.      This is a civil action against the Defendant for trademark infringement,

counterfeiting, and false designation of origin and unfair competition, under the Lanham Act (15 U.S.C. § 1051 *et. seq.*).

2.    This Court has subject matter jurisdiction over the claims in this action that relate to trademark infringement, counterfeiting, and false designation of origin and unfair competition pursuant to the provisions of 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

## Venue

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the Defendant resides in this district, the cause of action occurred in this district, and a substantial part of the events or omissions giving rise to these claims occurred in this judicial district, and the Defendant has extensive contacts with this judicial district relating to GS' claims.  The Defendant conducts regular and systematic business transactions in this judicial district, including direct sales to consumers in this judicial district, which violate the intellectual property rights of GS.

## Parties

4.    GS HOLISTIC, LLC is a Delaware Limited Liability Corporation that has its principal place of business at 7162 Beverly Boulevard, #207, Los Angeles, California 90036.  GS is the registered owner of the G PEN trademarks.

5.    CLOUD 69 CONVENIENCE        STORE        INC.        d/b/a CLOUD 69 CONVENIENCE        STORE        (hereinafter        referred        to        as

"CLOUD 69 CONVENIENCE STORE") is a corporations that is organized and existing under the laws of the State of  New York  and has its principal place of business at 1317 2nd Avenue, New York, NY 10021. GURDIP SINGH JOSAN owns and operates CLOUD 69 CONVENIENCE STORE  at that location.

6.    HI-FI NEWS & GROCERY INC. d/b/a PREMIUM CIGAR & SMOKE SHOP (hereinafter referred to as "PREMIUM CIGAR") is a corporation that is organized and existing under the laws of the State of New York, and has its principal place of business at 1734 2nd Ave New York NY 10128.  GURDIP SINGH JOSAN owns and operates PREMIUM CIGAR at that location.

7.    GURDIP SINGH JOSAN is domiciled in and a resident of Paramus, New Jersey.  Although, GURDIP SINGH JOSAN is a citizen of New Jersey, he regularly conducts and solicits business in the State of New York (including this Judicial District).   GURDIP SINGH JOSAN is the owner of CLOUD 69 and PREMIUM CIGAR.  GURDIP SINGH JOSAN controls and directs the activities, including the infringing activities, of CLOUD 69 and PREMIUM CIGAR.

<u>**Facts Common to All Counts**</u>

**The History of The G PEN Brand.**

8.    Since 2012, GS has marketed and sold products using the well-known trademark "G Pen."  The G Pen branded products, such as portable vaporizers and accessories related thereto, are widely recognized nationally and internationally.

Indeed, the G Pen brand is one of the leading companies in the industry, known for the high quality of the products at an achievable price point for all.

9.    For nearly ten years, GS has worked to distinguish the G Pen brand as the premier manufacturer of vaporizers by emphasizing the brand's unwavering use of quality materials and focusing on scientific principles which facilitate a superior smoking experience.  G Pen branded products embody a painstaking attention to detail, which is evident in many facets of authentic G Pen branded products.  It is precisely because of the unyielding quest for quality and unsurpassed innovation that G Pen branded products have a significant following and appreciation amongst consumers in the United States and internationally.

10.    As a result of the continuous and extensive use of the trademark "G PEN," Grenco Science was granted both valid and subsisting federal statutory and common law rights to the G Pen trademark.

11.    In 2016, Grenco Science assigned to GS all the rights associated with the G PEN trademark and other marks associated with the different products sold by GS.  The assignment to GS was duly recorded with the United States Patent and Trademark Office on May 24, 2016.  True and correct copies of the assignment of these marks are attached hereto as Exhibit "A."

12.    GS is the rightful owner of United States trademarks, which are registered on the Principal Register and have become incontestable within the

meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065.  The following is a list of GS' federally registered trademarks:

a.    U.S. Trademark Registration Number 4,390,645 for the standard character mark "G Pen" in association with goods further identified in registration in international class 010.

b.    U.S. Trademark Registration Number 5,368,594 for the word mark "G Pen" and its logo in association with goods further identified in the registration in international class 010.

c.    U.S. Trademark Registration Number 4,470,963 for the standard character mark "Grenco Science" in association with goods further identified in the registration in international class 010.

d.    U.S. Trademark Registration Number 4,616,071 for the standard character mark "Grenco" in association with goods further identified in the registration in international class 010.

e.    U.S. Trademark Registration Number 4,466,586 for the word mark "G" and its logo in association with goods further identified in the registration in international class 010.

f.    U.S. Trademark Registration Number 5,405,360 for the word mark "G Grenco Science" and its logo in association with goods further identified in the registration in international class 010.

g.    U.S. Trademark Registration Number 5,405,361 for the word mark "G Grenco Science" and its logo in association with goods further identified in the registration in international class 010.

13.    The above U.S. registrations are valid, subsisting and in full force and effect.  True and correct copies of the relevant Trademark Registrations are attached

hereto and marked as Exhibit "B." Hereinafter, GS utilizes the phrase "G PEN Marks" to refer to, collectively, GS' relevant federally registered, above-listed trademarks.

**The G PEN Brand in the United States**

14.    Pursuant to the trademark assignment between Grenco Science, Inc. and GS Holistic, LLC, GS has used the G Pen Marks in commerce throughout the United States, continuously, since 2016, in connection with the manufacturing of vaporizing products.

15.    The G Pen Marks are distinctive to both the consuming public and the Plaintiff's trade.  GS' G Pen branded products are made from superior materials. The superiority of G Pen branded products is not only readily apparent to consumers, but to industry professionals as well.

16.    GS' Trademarks are exclusive to GS and appear clearly on GS' Products, as well as on the packaging and advertisements related to such products. GS has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting GS' Trademarks.  As a result, products bearing GS' Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from GS.

17.    GS' Products have become some of the most popular of their kind in

the world and have also been the subject of extensive unsolicited publicity resulting from their high-quality and innovative designs.  Because of these and other factors, the GS brand and GS' Trademarks are famous throughout the United States.

18.    Since 2016, GS has worked to build significant goodwill in the G Pen brand in the United States.  GS has spent substantial time, money, and effort in developing consumer recognition and awareness of the G Pen brand, via point of purchase materials, displays, through their websites, attending industry trade shows, and through social media promotion.

19.    In fact, GS' Products have been praised and recognized by numerous online publications, as well as publications directed to the general public.

20.    Due to the high quality of the brand and products, GS has collaborated with numerous celebrities and companies to create collaborations.

21.    GS sells its products under the G Pen Marks to authorized stores in the United States, including in California.  GS has approximately 5,000 authorized stores in the United States selling its products.  As such, G Pen branded products reach a vast array of consumers throughout the country.

22.    It is because of the recognized quality and innovation associated with the G Pen Marks that consumers are willing to pay higher prices for genuine G Pen branded products.  For example, a G Pen brand vaporizer ranges in price from $70 to $250, while a non-G Pen branded product of equivalent size and technology will

usually sell from $11 to $20.

23.    It is exactly because of their higher sales value that G PEN branded products are targeted by counterfeiters.  The counterfeiters tarnish the G PEN brand by unlawfully selling vaporizers that have identical, or nearly identical, versions of the G PEN Marks affixed to products that are made with inferior or different materials, thereby leading to significant illegitimate profits by individuals such as the Defendant in the instant case, GURDIP SINGH JOSAN.

24.    In essence, the Defendant mislead consumers by selling in his stores low grade products that take a free ride on the goodwill of the G PEN brand, and in turn, the Defendant reaps ill-begotten profits.  The Defendant's offering for sale of counterfeit G PEN products contributes to the complete flooding of the marketplace with G PEN counterfeit products, which results in lost sales and damages to GS and irreparable harm to the G PEN brand's image.

25.    The sale of the counterfeit products also cause harm to GS in that legitimate store owners will not purchase authentic G PEN vaporizers when stores selling counterfeit products are selling products which appear to be identical and at half the price which authentic products can be sold.

26.    Unfortunately, the current U.S. marketplace is saturated with counterfeit G PEN products – just like those GURDIP SINGH JOSAN, through his stores, CLOUD 69 and PREMIUM CIGAR., is offering for sale.  As such, GS has

been forced to scrupulously enforce its rights in order to protect the G PEN Marks against infringement. By exercising its Enforcement Rights, GS has proactively and successfully policed the unauthorized use of the G PEN Marks and/or counterfeit G PEN branded products nationwide. GS has had to bear great expense to seek out and investigate suspected counterfeiters in GS' attempt to clean up the marketplace.

**Defendants' Counterfeiting and Infringing Activities**

27.     The Defendant operates a retail smoke shop through which he sells water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and other smoking related devices.

28.      The Defendant has offered for sale counterfeit G PEN products with the G PEN trademark and without the consent of GS. In fact, he has offered counterfeit vaporizers bearing imitations of the G PEN Trademarks that were not made or authorized by GS. These are hereinafter the "Counterfeit Goods."

29.     Nevertheless, the Defendant has offered for sale in commerce the Counterfeit Goods, specifically, the Defendant has offered for sale reproductions, counterfeits, copies and/or colorable imitations of one or more of the G PEN Marks (hereinafter the "Infringing Marks"), detailed above.

30.     The Defendant has, without the consent of GS, offered for sale in his stores, the Counterfeit Goods bearing the Infringing Marks, bearing the likeness of the G PEN Trademarks in the United States.

31.     The marks affixed to the Counterfeit Goods that the Defendant has offered for sale are spurious marks which are identical with, or substantially indistinguishable from, the G PEN Trademarks. The marks on the Counterfeit Goods are in fact counterfeit marks as defined in 15 U.S.C. § 1116(d).

32.     Moreover, the products upon which the Counterfeit Marks are affixed are almost identical to authentic products, so the offering for sale of the almost identical products with indistinguishable marks causes confusion in the marketplace among consumers.

33.     In the ongoing investigation into the sales of counterfeit products bearing the fake G PEN Marks, CLOUD 69 and PREMIUM CIGAR offered for sale Counterfeit Goods.

34.     Specifically, on April 15, 2023, GS' investigator attended CLOUD 69 CONVENIENCE STORE's locations, which was open to the public, and observed that it had seven (7) vaporizers which appeared to display each of the G PEN Marks.  The investigator purchased a vaporizer with G PEN Marks affixed to it, from CLOUD 69 CONVENIENCE STORE, for a cost of $120.00, charged to the account of GS' investigator.  Upon physical inspection by GS' investigator, the product was found to be a counterfeit product in that it displayed the Infringing Marks.

35.     Attached hereto as Exhibit "C" are the photographic examples of the

Defendants' use of the Infringing Marks, taken from the Counterfeit Good.  As seen in the pictures, the Counterfeit Good contained each of the seven aforementioned of GS' marks on it: U.S. Trademark Registration Number 4,390,645; U.S. Trademark Registration Number 5,368,594; U.S. Trademark Registration Number 4,470,963; U.S. Trademark Registration Number 4,616,071; U.S. Trademark Registration Number 4,466,586; U.S. Trademark Registration Number 5,405,360; U.S. Trademark Registration Number 5,405,361.

36.    Additionally, on December 18, 2023, GS' investigator attended PREMIUM CIGAR's location, which was open to the public, and observed that it had eight (8) vaporizers which appeared to display each of the G PEN Marks.  The investigator purchased a vaporizer with G PEN Marks affixed to it, from PREMIUM CIGAR, for a cost of $32.66, charged to the account of GS' investigator.  Upon physical inspection by GS' investigator, the product was found to be a counterfeit product in that it displayed the Infringing Marks.

37.    Attached hereto as Exhibit "D" are the photographic examples of the Defendants' use of the Infringing Marks, taken from the Counterfeit Good.  As seen in the pictures, the Counterfeit Good contained each of the seven aforementioned of GS' marks on it: U.S. Trademark Registration Number 4,390,645; U.S. Trademark Registration Number 5,368,594; U.S. Trademark Registration Number 4,470,963; U.S. Trademark Registration Number 4,616,071; U.S. Trademark Registration

Number 4,466,586; U.S. Trademark Registration Number 5,405,360; U.S. Trademark Registration Number 5,405,361.

38.    The Defendant's use of the Counterfeit Marks is substantially indistinguishable, if not identical, to GS' Marks.

39.    GURDIP SINGH JOSAN authorized, directed, and/or participated in both CLOUD 69 and PREMIUM CIGAR's offer for sale, in commerce, of the Counterfeit Goods.  GURDIP SINGH JOSAN's acts were a moving, active, and conscious force behind both CLOUD 69 and PREMIUM CIGAR's infringement of the G PEN Trademarks.

40.    The Defendant's use of the counterfeit G PEN Trademarks began after the registration of the G PEN Trademarks.  Neither GS, nor any of its authorized agents, have consented to the Defendants' use of the G PEN Trademarks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof.

41.    The unauthorized offering for sale by CLOUD 69 and PREMIUM CIGAR, under the authority, direction and/or participation of GURDIP SINGH JOSAN, of the Counterfeit Goods was an unlawful act in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a).

42.    The offer for sale by the Defendants of the Counterfeit Goods bearing the Infringing Marks has caused GS to suffer losses and is likely to cause damage to the goodwill and reputation associated with the G PEN Trademarks, which are

owned by GS.

43.    CLOUD 69 and PREMIUM CIGAR's use of the G PEN Marks includes displaying to offer for sale unauthorized copies of Counterfeit G PEN branded products.  CLOUD 69 and PREMIUM CIGAR's offering to sell the G PEN counterfeit products, bearing the Infringing Marks in this manner, was, and is, likely to cause confusion or to cause mistake and/or deceive consumers who purchase the Counterfeit Goods.

44.    CLOUD 69 and PREMIUM CIGAR used images and names identical to or confusingly similar to the G PEN Marks, to confuse customers and aid in the promotion and sales of Counterfeit Goods under the Infringing Marks.   The Infringing Marks affixed to the Counterfeit Goods that CLOUD 69 and PREMIUM CIGAR has offered for sale are confusingly identical or similar to the G PEN Marks that GS affixes to its vaporizers.  The Counterfeit Goods and GS' goods are both vaporizers, and trademarks identical or confusingly similar to the G PEN marks appear on the Infringing Goods.

45.    The Defendant's Infringing Goods travel in identical channels of trade and are sold to identical consumers as G PEN genuine goods.

46.    The vaporizers that both CLOUD 69 and PREMIUM CIGAR sell and offer for sale under the Infringing Marks are made of substantially inferior and/or different materials as compared to genuine G PEN brand products.

47.    CLOUD 69 and PREMIUM CIGAR have offered for sale its water pipes under the Infringing Marks through its retail convenience stores.

48.    CLOUD 69, PREMIUM CIGAR, and GURDIP SINGH JOSAN's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Counterfeit Goods sold by CLOUD 69 and PREMIUM CIGAR, and are likely to deceive, and have deceived, the relevant consuming public into mistakenly believing that the Counterfeit Goods sold by CLOUD 69 and PREMIUM CIGAR originate from, and are associated or affiliated with, or otherwise authorized by GS.

49.    CLOUD 69, PREMIUM CIGAR and GURDIP SINGH JOSAN's acts are willful with the deliberate intent to trade on the goodwill of the G PEN Marks, cause confusion and deception in the marketplace, and divert potential sales of the Plaintiff's vaporizers to CLOUD 69 and PREMIUM CIGAR.  The Defendants, as merchants of tobacco shop goods, is held to the standard of having specialized knowledge in the tobacco shop industry.  It is readily apparent that the Defendant, as merchants, have failed to conduct any reasonable inquiry into the authenticity of the goods sold by their shop and has acted with at least willful blindness as to GS' intellectual property rights in the G PEN Marks.  Here, the Defendants offered for sale, and sold, counterfeit products at a price of $32.66 – significantly below the

market value for genuine goods bearing the G PEN Marks. The Defendants should have recognized this price point as suspicious. Additionally, the Defendants also failed to notice – or ignored – that the products lacked a barcode or SKU, both of which are standard indicators of authenticity that any merchant of Defendant's caliber is expected to identify. By failing to conduct any reasonable investigation into the authenticity of the products prior to sale, despite these clear red flags, the Defendants acted with willful blindness and/or reckless disregard of the Plaintiff's trademark rights.

50. CLOUD 69, PREMIUM CIGAR, and GURDIP SINGH JOSAN's acts have caused damage and immediate irreparable harm to GS, the G PEN Marks, and to its valuable reputation and goodwill with the consuming public for which GS has no adequate remedy at law.

51. As a proximate result of the unfair advantage accruing CLOUD 69 and PREMIUM CIGAR's business from deceptively trading on GS' advertising, sales, and consumer recognition, GURDIP SINGH JOSAN has made profits and gains to which he is not in law or equity entitled.

52. The injuries and damages sustained by GS have been directly and proximately caused by CLOUD 69 and PREMIUM CIGAR's offers for sale of their goods bearing infringements or counterfeits of the G PEN Marks.

53. Through such business activities, GURDIP SINGH JOSAN

purposefully derived direct benefits from their interstate commerce activities by targeting foreseeable purchasers in the State of New York, and in doing so, have knowingly harmed GS.

54.    Furthermore, the sale and distribution of Counterfeit Goods by CLOUD 69 and PREMIUM CIGAR has infringed upon the above-identified federally registered trademarks.

55.    The spurious marks or designations used by CLOUD 69 and PREMIUM CIGAR in interstate commerce are identical with, or substantially indistinguishable from, the G PEN Marks on goods covered by the G PEN Marks. Such use therefore creates a false affiliation between CLOUD 69 and PREMIUM CIGAR, GS, and the G PEN Marks.

56.    Due to the actions of GURDIP SINGH JOSAN, GS has been forced to retain the undersigned counsel and pay the costs of bringing an action forward. GURDIP SINGH JOSAN should be responsible for paying GS' reasonable costs of the action.

57.    GURDIP SINGH JOSAN's acts have damaged, and will continue to damage GS, and GS has no adequate remedy at law.

58.    Moreover, GURDIP SINGH JOSAN's wrongful acts will continue unless enjoined by the Court.  Accordingly, GURDIP SINGH JOSAN, CLOUD 69, and PREMIUM CIGAR must be restrained and enjoined from any further

counterfeiting or infringement of the G PEN Marks.

## Count One
## Federal Trademark Counterfeiting and Infringement, 15 U.S.C. § 1114

59.    The Plaintiff avers Paragraphs 1 through 58, which are stated above and incorporate the allegations therein, as though they are fully restated in this Count by reference.

60.    GS owns the federally registered G PEN Trademarks, as set forth in more detail in the foregoing paragraphs.

61.    The Defendant, without authorization from GS, has used in commerce a spurious designation that is identical with, or substantially indistinguishable from, the G PEN Trademarks on the same goods covered by the G PEN Trademarks.

62.    The Defendant's unauthorized use of counterfeit marks of the registered G PEN Trademarks on and in connection with the Defendant's offer for sale in commerce is likely to cause confusion or mistake in the minds of the public.

63.    The Defendant's conduct as alleged herein is willful and intended to cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendant, with GS or the G PEN Trademarks.

64.    The Defendant's acts constitute willful trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

65.    The Defendant's actions constitute the use by the Defendants of one or more "counterfeit mark(s)" as defined in 15 U.S.C. § 1116(d)(1)(B).

17

66.    The Defendant's use in commerce of the counterfeit G PEN Trademarks has resulted in lost profits and business to GS, which are difficult to determine.  The Defendant has also, by selling counterfeit G PEN products, caused considerable damage to the goodwill of the G PEN Trademarks, and diminished the brand recognition of the G PEN Trademarks by introducing counterfeit products into the marketplace.

67.    By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### Count Two
### Federal False Designation of Origin 15 U.S.C. § 1125(a)

68.    The Plaintiff avers Paragraphs 1 through 58, which are stated above and incorporate the allegations therein, as though they are fully restated and incorporated in this Count by reference.

69.    GS owns the federally registered G PEN Trademarks, as set forth in more detail in the foregoing paragraphs.

70.    The Defendant, without authorization from GS, has used in commerce spurious designations that are identical with, or substantially indistinguishable from, the G PEN Trademarks on the same goods covered by the G PEN Trademarks.

71.    The Defendant's unauthorized use of counterfeit marks of the

registered G PEN Trademarks on and in connection with the Defendants' offers for sale in commerce is likely to cause confusion or mistake in the minds of the public.

72.    The Defendant's unauthorized use in commerce of the G PEN Trademarks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73.    The Defendant's conduct as alleged herein is willful and is intended to, and is likely to, cause confusion, mistake, or deception as to the affiliation, connection, or association of the Defendant, with GS or the G PEN Trademarks.

74.    The Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to GS, and to the goodwill and reputation of the G PEN Trademarks.  Moreover, it will continue to cause damage to GS and confuse the public unless enjoined by this Court.

75.    GS has no adequate remedy at law.

76.    By reason of the foregoing, the Plaintiff is entitled to, among other relief, injunctive relief, an award of statutory damages, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, GS HOLISTIC, LLC, respectfully requests the

following relief against the Defendant, as follows:

1.      With regard to Plaintiff's Count I for trademark infringement:

   a.  Statutory damages under 15 U.S.C. § 1117(c);

   b.  Costs of suit; and

   c.   Joint and several liability for GURDIP SINGH JOSAN, and other officers, and directors, for the knowing participation in the counterfeiting activities of CLOUD 69 and PREMIUM CIGAR;

   d.  Award GS HOLISTIC LLC its reasonable attorneys' fees and costs.

2.      With regard to Plaintiff's Count II for false designation and unfair competition:

   a.  Disgorgement of profits under 15 U.S.C. § 1117(a);

   b.  Treble damages under 15 U.S.C. § 1117(b);

   c.  Costs of suit; and

   d.  Joint and several liability for GURDIP SINGH JOSAN, and other officers, and directors, for the knowing participation in the counterfeiting activities of CLOUD 69 and PREMIUM CIGAR.

3.      Entry of an order requiring Defendants to pay prejudgment interest according to law.

4.      Preliminarily and permanently enjoining CLOUD 69 and PREMIUM CIGAR and its agents, employees, officers, directors, owners, representatives,

successor companies, related companies, and all persons acting in concert or participation with it from:

   a. The import, export, making, manufacture, reproduction, assembly, use, acquisition, purchase, offer, sale, transfer, brokerage, consignment, distribution, storage, shipment licensing, development, display, delivery, marketing, advertising or promotion of the counterfeit G PEN product identified in the Complaint and any other unauthorized G PEN product, counterfeit, copy or colorful imitation thereof;

5.     Pursuant to 15 U.S.C. § 1116(a), directing CLOUD 69 and PREMIUM CIGAR to file with the Court and serve on the Plaintiff's within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which CLOUD 69 and PREMIUM CIGAR has complied with the injunction;

6.     For an order from the Court requiring that the Defendants provide complete accountings and for equitable relief, including that the Defendants disgorge and return or pay their ill-gotten gains obtained from the illegal transactions entered into and/or pay restitution, including the amount of monies that should have been paid if the Defendants had complied with their legal obligations, or as equity requires;

7.    For an order from the Court that an asset freeze or constructive trust be imposed on all monies and profits in the CLOUD 69 and PREMIUM CIGAR possession, which rightfully belong to the Plaintiff;

8.    Pursuant to 15 U.S.C. § 1118 requiring that the Defendants and all others acting under the Defendants' authority, at its cost, be required to deliver up to the Plaintiff for destruction all products, accessories, labels, signs, prints, packages, wrappers, receptacles, advertisements, and other material in their possession, custody or control bearing any of the G PEN Trademarks.

9.    For such further and other relief and this Honorable Court may deem just and equitable.

### **Demand for Jury Trial**

The Plaintiff demands a Jury Trial on all issues so triable.

Date: June 26, 2025

Respectfully submitted,

Anthony M. Verna III
Verna Law, P.C.
80 Theordore Fremd Ave.
Rye, NY 10580
Serv611@LegalBrains.com
Telephone: 561-232-2222
*Attorney for the Plaintif*